UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEIGH HUNTINGTON-PRICE,    ) | |
|                  ) | No. CV-07-5039-CI |
|     Plaintiff,   ) | |
|                  ) | ORDER GRANTING PLAINTIFF'S |
| v.                ) | MOTION FOR SUMMARY JUDGMENT |
|                  ) | AND REMANDING FOR FURTHER |
| MICHAEL J. ASTRUE,     ) | ADMINISTRATIVE PROCEEDINGS |
| Commissioner of Social   ) | |
| Security,         ) | |
|                  ) | |
|     Defendant.   ) | |
|                  ) | |
|                  ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 11, 13.)  Attorney Raymond R. Whitlow represents Plaintiff; Special Assistant United States Attorney Kathryn A. Miller represents Defendant.  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 4.)  After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment (Ct. Rec. 11) and **REMANDS** for further administrative proceedings.  Defendant's Motion for Summary Judgment (Ct. Rec. 13) is **DENIED.**

### JURISDICTION

On February 17, 2005, Plaintiff Leigh Huntington-Price (Plaintiff) filed for disability insurance benefits (DIB) and Supplemental Security Income (SSI) with an onset date of July 9, 2004. (Tr. 50-52, 261A-261C.)  Upon initial application, Plaintiff alleged

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1

disability due to obesity, a sleep disorder, and hypoglycemia. (Tr. 63-69.) Benefits were denied initially and on reconsideration. (Tr. 28-31, 33-34.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Richard Say on November 16, 2006. (Tr. 311-343.) Plaintiff, who was present and represented by counsel, Antonio Gutierrez, and vocational expert Dennis Elliott, testified. The ALJ denied benefits and the Appeals Council denied review. (Tr. 6-9.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the hearing, Plaintiff was 23 years old, had graduated from high school, and completed two years of community college through the Running Start program. (Tr. 112, 314.) She lived with Antonio Gutierrez. (Tr. 315.) Plaintiff testified she last worked on July 9, 2004, as a technical support agent, but was terminated for attendance problems. (Tr. 315-316.) She attributes the attendance problems to a severe sleep disorder. (Tr. 316.) Plaintiff has past work experience as a customer service representative, sales clerk, and office helper. (Tr. 331, 340.) She underwent gastric bypass surgery in September of 2005, and a second corrective surgery in March of 2006. (Tr. 150, 317.) Plaintiff testified doctors "have approved me for full exercise." (Tr. 323.) She stated she could lift 40 to 50 pounds, sit for 45 minutes, and stand 30 minutes to 2 hours. (Tr. 323-325.)

## ADMINISTRATIVE DECISION

ALJ Say found Plaintiff met the insured status requirements for DIB through September 30, 2005. (Tr. 16.) At step one of the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2

sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since the onset date of July 9, 2004. (18.)   At steps two and three, he found Plaintiff had the severe impairments of obesity, resolved with gastric bypass surgery, a juvenile/adolescent history of attention deficit-hyperactivity disorder (ADHD) and a depressive disorder, which resolved prior to Plaintiff's onset date of July 2004, but these impairments alone or in combination did not meet or equal one of the listed impairments in 20 C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings).   (Tr. 19.)   The ALJ found Plaintiff's statements "not entirely credible." (Tr. 22.)   At step four, he determined that prior to her gastric bypass surgery, Plaintiff had the residual functional capacity (RFC) to perform sedentary work, and within 12 months of surgery, the capacity to perform medium exertion work.   (Tr. 19.)

At step four, based on vocational expert testimony, the ALJ determined Plaintiff could perform her past relevant work as a customer service representative.   (Tr. 22.)   Therefore, Plaintiff was not found "disabled" as defined in the Social Security Act at any time through the date of the ALJ decision.   (Tr. 22-23.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo. Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000).   The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.   *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.   *Richardson v. Perales*, 402 U.S. 389, 401 (1971).   If the evidence is susceptible to more than one

rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

### SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 4

1   conflicts in evidence. *Richardson,* 402 U.S. at 400.  If evidence

2   supports more than one rational interpretation, the court may not

3   substitute its judgment for that of the Commissioner. *Tackett*, 180

4   F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

5   If there is substantial evidence to support the administrative

6   findings, or if there is conflicting evidence that will support a

7   finding of either disability or non-disability, the finding of the

8   Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-

9   1230 (9th Cir. 1987).  Nevertheless, a decision supported by

10  substantial evidence will still be set aside if the proper legal

11  standards were not applied in weighing the evidence and making the

12  decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d

13  432, 433 (9th Cir. 1988).

14                              **ISSUES**

15      The question is whether the ALJ's decision is supported by

16  substantial evidence and free of legal error.  Specifically, Plaintiff

17  argues the ALJ erred in his credibility and RFC findings.

18                            **DISCUSSION**

19  **A.   Credibility**

20      In *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002), the

21  court held when an ALJ finds the claimant's testimony as to the

22  severity of pain and impairments is unreliable, the ALJ must make a

23  credibility determination with findings sufficiently specific to

24  permit the court to conclude the ALJ did not arbitrarily discredit

25  claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th

26  Cir. 1991) (en banc).

27      While the ALJ cannot disregard a claimant's subjective complaints

28  regarding the severity of his or her symptoms solely because there is

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 5

a lack of objective medical evidence to support the testimony, there must be some objective medical evidence of an impairment for the time at issue. However, the lack of objective medical evidence is just one factor considered by the Commissioner. *Id.* at 345. The following factors may be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas*, 278 F.3d at 958.

Once there is evidence of a medically determinable impairment likely to cause an alleged symptom, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Bunnell*, 947 F.2d at 346. In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(*citation omitted*).

Here, there is no evidence of malingering, thus the adjudicator's credibility determination must be supported by "clear and convincing" reasons. ALJ Say made the following credibility findings:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements and the statements of her third-parties concerning the intensity, persistence and limiting effects of these symptoms are not found entirely credible.

1   (Tr. 22.)  The ALJ appears to contradict this finding when he included

2   the following limitation in the first hypothetical presented to the

3   vocational expert:

> [L]imited to sedentary activities, primarily because of her
> weight.  .  .  .  Assume further that this individual is
> afflicted with symptoms from various sources including mild
> to moderate chronic pain which is of sufficient severity to
> be noticeable to her at all times, but she would be able to
> remain attentive and responsive in a work setting, and could
> carry out normal work assignments satisfactorily.

8   (Tr. 340-341.)

9       In his decision, the ALJ states:

> Based on the evidence of record, the undersigned
> accepts that the claimant has a past history of a mood
> disorder under Listing 12.04 for Affective Disorders, and an
> attention deficit-hyperactivity disorder (ADHD) under
> Listing 12.02 for Organic Brain Disorders, but these
> conditions were resolved prior to her alleged onset date of
> July 2004.  The undersigned finds that since July 2004, the
> only "severe" impairment or condition that has affected the
> claimant was obesity which was also resolved with gastric-
> bypass surgery in September 2005.  Her medical records
> thereafter show that, other than treatment for a gastric
> fistula, she was reporting doing well and eating all types
> of foods without difficulty, well within twelve months of
> her surgery.  The undersigned further notes that she has
> reported spending a considerable amount of time on the
> computer; she is working on writing books; and she
> corresponded with a number of individuals in Japan over the
> internet.

20  (Tr. 21-22.)

21      The ALJ's finding that Plaintiff's credibility is diminished by

22  her ability to write and communicate on the computer is not supported

23  by the record.  Plaintiff testified she currently spends 30 to 45

24  minutes on the computer and stops due to lower back pain.  (Tr. 321-

25  323.)  Plaintiff testified that from October 2005 (a month after the

26  initial by-pass surgery) to by-pass corrective surgery and gallbladder

27  removal in March of 2006, she could not sit at the computer for even

28  5 or 10 minutes to check her email due to severe pain.  (Tr. 327-329.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7

1   While this is somewhat contradicted by the February 27, 2006, notation
2   by Plaintiff's treating surgeon, Mathew Rawlins, M.D., that her first
3   three and a half months after the first by-pass surgery were
4   "uneventful" (Tr. 152), this is not mentioned by the ALJ.  Six months
5   prior to her first surgery, on March 17, 2005, Plaintiff told
6   examining psychologist Ronald Page, Ph.D., she spends considerable
7   time on the computer. (Tr. 113.)  While the ALJ correctly observes
8   that Plaintiff is currently finishing editing one novel and beginning
9   another (Tr. 322), the record is silent (other than Plaintiff's
10  testimony) as to the amount of time she spends daily at this activity.
11  Similarly, the ALJ is correct that Plaintiff communicates with people
12  in Japan over the internet, but the record does not reflect the amount
13  of time spent at this activity.

14       Plaintiff's complaint of stomach problems on July 24, 2006, four
15  months after the corrective surgery, to Dr. Rawlins (Tr. 257), is
16  mentioned briefly by the ALJ: "In July 2006, she reported epigastric
17  burning after meals, which persisted for about 30 minutes.  However,
18  she reported no other pain complaints including the abdomen, and she
19  was tolerating a wide variety of foods.  The symptoms were consistent
20  with gastrojejunal ulcer." (Tr. 21.)  After opining that Plaintiff's
21  symptoms were consistent with a gastrojejunal ulcer, Dr. Rawlins
22  ordered an upper endoscopy which revealed a marginal ulcer. (Tr. 257,
23  260.) Plaintiff testified that after gastric by-pass surgery she has
24  been required to eat many small meals throughout the day, meaning she
25  was experiencing many episodes of 30-minute pain.

26       The remaining credibility findings, *e.g.,* "medical records show
27  that, other than treatment for a gastric fistula, she was reporting
28  doing well and eating all types of foods without difficulty well

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8

within 12 months of her surgery," does not accurately reflect the medical records with respect to Plaintiff's continued severe gastric problems before and after the corrective second surgery.  On January 6, 2006 (barely four months after the first by-pass surgery), Plaintiff reported to treating physician Bruce Barga, M.D., continued severe gastric problems, including multiple episodes of emesis daily, and difficulty swallowing either a liquid or soft diet.  (Tr. 150, 206.)  Plaintiff underwent an upper endoscopy and upper GI on January 10 and 11, 2006, which revealed the gastric fistula and stenosis of the gastrojejunostomy.   (Tr. 214.)  On January 27, 2006, Dr. Rawlins was able to dilate and avoid surgery, one of "multiple failed endoscopy dilations." (Tr. 150, 218.)  On March 1, 2006, Dr. Rawlins preformed the second corrective surgery, a laparoscopic takedown of gastrogastric fistula and revision of gastrojejunostomy.  (Tr. 150.)

Similarly, the ALJ's statement that Plaintiff's past history of a mood disorder had resolved prior to onset in July of 2004 is contradicted by treating psychologist Jimmye Angell, Ph.D.'s assessed GAf of 55 on August 17, 2005.  (Tr. 228.)   The ALJ's findings are neither specific nor "clear and convincing." (Tr. 20-22.)  The ALJ's rejection of Plaintiff's mental impairments as "non-severe" at step two is unsupported by the record.  The ALJ's failure to articulate "clear and convincing" reasons for rejecting Plaintiff's subjective complaints regarding the severity of her pain and limitations is reversible error.  *Orn v. Astrue,* 495 F.3d 625, 640 (9th Cir. 2007).

**B.   Remedy**

Although the record includes evidence that might be a basis for a rejection of Plaintiff's specific allegations regarding the severity of her symptoms and limitations, without the assertion of specific

reasons by the fact-finder, the court cannot assume Plaintiff's lack of credibility, and the court cannot make independent findings. Although counsel for the Commissioner enumerates reasons for upholding the ALJ's findings (Ct. Rec. 14 at 7-13), the reviewing court "is constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (*citations omitted*).  Where evidence has been identified that may be a basis for a credibility finding, but the findings are not articulated, remand is the proper disposition.  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990).   *Id.*   On remand, the ALJ will conduct a new sequential evaluation, make new credibility findings with specificity, make a new RFC determination, and if necessary take additional vocation expert testimony at step five.   The ALJ should consider the record in its entirety, including unrejected medical opinions and Plaintiff's unrejected testimony.  Accordingly,

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 11)** is **GRANTED** and the case **REMANDED** for further administrative proceedings.

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED.**

3.   An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED.**

DATED May 13, 2008.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10